UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WALT FAMULAR, HOWARD FRANK,  :
NANCY FURLONG, JOHN NEWMAN, :
SHERRY ADAMS, RICHARD SPAHR, :
WILLIAM DAVID SEAY, DARLA   :
MOULTON, and KARIN LEMAY, on behalf :
of themselves and all others similar situated, :  **AMENDED**
      Plaintiffs, :  **OPINION AND ORDER**
         :
v.          :  16 CV 944 (VB)
         :
WHIRLPOOL CORPORATION, LOWE'S :
HOME CENTERS, LLC, HOME DEPOT :
U.S.A., INC., and SEARS HOLDINGS  :
CORPORATION,      :
      Defendants. :
-------------------------------------------------------------x

Briccetti, J.:

   Plaintiffs Walt Famular, Howard Frank, Nancy Furlong, John Newman, Sherry Adams,

Richard Spahr, William David Seay, Darla Moulton, and Karin LeMay (collectively,

"plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against

defendants Whirlpool Corporation ("Whirlpool"), Lowe's Home Centers, LLC ("Lowe's"),

Home Depot U.S.A., Inc. ("Home Depot"), and Sears Holdings Corporation ("Sears")

(collectively, "defendants"), for allegedly misrepresenting the water and energy efficiency of

three models in Whirlpool's Maytag Centennial line of washing machines.

   Plaintiffs bring state law claims for breach of express warranty, unjust enrichment, and

violations of various states' consumer-protection statutes.

   Before the Court are two motions to dismiss. (Docs. ##29, 32). Home Depot moves to

dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for untimeliness and failure to

state a claim under Rule 12(b)(6). The remaining defendants—Whirlpool, Lowe's, and Sears—separately move to dismiss on the same grounds.

For the reasons set forth below, the motions to dismiss as to Home Depot, Lowe's, and Sears are GRANTED; and Whirlpool's motion to dismiss is GRANTED IN PART and DENIED IN PART, with the only surviving claims being Famular's claims against Whirlpool.

The Court has subject matter jurisdiction pursuant to pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

In deciding the pending motions, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor.

This case arises from the purchase of three models of Whirlpool's washing machines by nine different plaintiffs, each a resident of a different state: Famular (New York), LeMay (Tennessee), Newman (Maryland), Moulton (South Dakota), Seay (South Carolina), Frank (Illinois), Spahr (Pennsylvania), Furlong (Kentucky), and Adams (Oklahoma). Each plaintiff purchased the washing machine in his or her home state. The washing machines at issue in this case come from Whirlpool's Maytag Centennial line of residential washing machines, with model numbers MVWC6ESWW1, MVWC6ESWW0, and MVWC7ESWW0[1] (the "allegedly mislabeled washing machines").

Many of the plaintiffs purchased their washing machines from Home Depot, Sears, and Lowe's. Home Depot is a Delaware corporation with its principal place of business in Georgia. Sears is a Delaware corporation with its principal place of business in Illinois. Lowe's is a North Carolina corporation, with its principal place of business there as well. Whirlpool is a Delaware corporation with a principal place of business in Michigan.

---

[1] Although these models have some differences, the differences are immaterial to this dispute. All three models have the same energy usage, water usage, and load capacity.

The allegedly mislabeled washing machines were labeled and marketed as ENERGY STAR® compliant and displayed the ENERGY STAR® label. The ENERGY STAR® program is administered by the United States Department of Energy and the United States Environmental Protection Agency, and is intended "to identify and promote energy-efficient products . . . to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products . . . that meet the highest energy conservation standards." 42 U.S.C. § 6294a. To that end, to qualify for the ENERGY STAR® program, residential washing machines must meet energy- and water-efficiency criteria. "Since ENERGY STAR® is widely recognized as the preeminent brand for energy efficient products, participation in the ENERGY STAR® program has a significant impact on the marketability of products." (Am. Compl. ¶ 27). Accordingly, industry participants seek out the ENERGY STAR® licensing.

"The most significant tool used in the ENERGY STAR® program is the ENERGY STAR® label that incorporates the ENERGY STAR® certification mark." (Id. ¶ 28). To the consumer, the ENERGY STAR® label indicates that a given product is highly efficient, which enables "consumers to maximize their water and energy savings while helping to protect the environment." (Id. ¶ 29). Although ENERGY STAR® products are often more expensive than otherwise-comparable models, consumers are willing to pay this higher up-front cost due to the long-term environmental benefits and water- and energy-cost savings.

Each plaintiff purchased an allegedly mislabeled washing machine sometime during 2009 or 2010. Plaintiffs claim to have relied on the ENERGY STAR® qualification of the washing machines and made their purchase, at a price premium, due the machines' "supposed water and energy efficiency and ENERGY STAR® qualification." (Id. ¶¶ 84–92).

Beginning in 2010, the Department of Energy tested the allegedly mislabeled washing machines to ensure compliance with the ENERGY STAR® standards. In 2012 the allegedly mislabeled washing machines were disqualified from the ENERGY STAR® program because results showed these models failed to meet the ENERGY STAR® standards. (Id. ¶¶ 93–103).

Plaintiffs were all members of a putative nationwide class in Dzielak v. Whirlpool Corp., Case No. 2:12-cv-00089-KM-JBC ("Dzielak"), filed on January 5, 2012, in the United States District Court for the District of New Jersey. None of the plaintiffs here was a named plaintiff in Dzielak. On February 5, 2016, the Dzielak plaintiffs voluntarily narrowed their proposed class by seeking certification of only seven state classes, none of which is included in this case. On February 8, 2016, plaintiffs filed the complaint in this case (Doc. #1), and, on March 9, 2016, they filed an amended complaint. (Doc. #5).

## DISCUSSION

I.     Legal Standards

A.     Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff[s] bear[] the burden of showing that the court has jurisdiction over [each] defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Prior to conducting discovery, plaintiffs may defeat a motion to dismiss "by pleading in good faith legally sufficient allegations of jurisdiction." Ball v. Matallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Plaintiffs can also make this showing through their own affidavits and supporting materials containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendants. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff[s] and doubts are resolved in the plaintiff[s'] favor." A.I. Trade Fin.,

Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993). When deciding a motion to dismiss for lack of personal jurisdiction, the Court must consider defendants' contacts with the forum state at the time of plaintiffs' filing of the complaint. Nelson v. Mass. Gen. Hosp., 2007 WL 2781241, at *13 (S.D.N.Y. Sept. 20, 2007). When the action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action. Beach v. Citigroup Alt. Invests. LLC, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014).

B. Rule 12(b)(6) Motions to Dismiss

1. Statute of Limitations

Under New York law, which governs when federal subject matter jurisdiction exists by way of diversity, the statute of limitations is an affirmative defense, and the burden is on defendants to show plaintiffs' claims are untimely. Bano v. Union Carbide Corp., 361 F.3d 696, 707–10 (2d Cir. 2004). Defendants generally meet this burden by demonstrating when the causes of action accrued. St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010). Because the burden lies with defendants, "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007). On a Rule 12(b)(6) motion, the Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear the claim is untimely. Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999). For a defendant's statute of limitations argument to succeed, the plaintiff must "plead[] itself out of court." In re marchFIRST Inc., 589 F.3d 901, 904–05 (7th Cir. 2009).

2. <u>Failure to State a Claim</u>

In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Id</u>. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.

II.    <u>Personal Jurisdiction</u>

To determine whether personal jurisdiction exists over a non-domiciliary defendant, which all defendants are, the Court engages in a two-step inquiry.  <u>Chloe v. Queen Bee of Beverly Hills, LLC</u>, 616 F.3d 158, 163 (2d Cir. 2010).  First, the Court determines whether the forum state's law permits the exercise of jurisdiction over each defendant.  <u>Id</u>.  "[T]he second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the

United States Constitution." Id. at 164. Due Process requires that personal jurisdiction exist over each defendant. See, e.g., Calder v. Jones, 465 U.S. 783, 788–791 (1984).

"[A] court may exercise two types of personal jurisdiction over a corporate defendant properly served with process. These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2016).

Specific personal jurisdiction over a defendant exists "in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

Whirlpool concedes that specific personal jurisdiction exists over it with respect to Famular's claims. With the exception of Famular's claims against Whirlpool, defendants argue there is no basis for specific personal jurisdiction over any defendant, and plaintiffs do not contest this.

Given the lack of specific personal jurisdiction over all defendants with respect to all claims, the Court must determine whether there is general personal jurisdiction over each defendant.[2] In contrast to specific personal jurisdiction, general personal jurisdiction "permits a

---

[2]     Although Whirlpool concedes personal jurisdiction exists over it with respect to Famular's claim (and therefore Famular need not establish this Court's general personal jurisdiction over Whirlpool), all the other plaintiffs must establish personal jurisdiction over Whirlpool, and Famular must establish personal jurisdiction over all the other defendants.

court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." Brown v. Lockheed Martin Corp., 814 F.3d at 624.

"A court may assert general jurisdiction over [a] foreign (sister-state or foreign-country) corporation[] to hear any and all claims against [the corporation] when [the corporation's] affiliations with the State . . . render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. at 919. "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,' but rather . . . 'whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum.'" Brown v. Lockheed Martin Corp., 814 F.3d at 627 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) ("Daimler")). A corporation is "essentially at home" in the state of incorporation and the state of its principal place of business. Daimler, 134 S. Ct. 760–61. Only in a "truly exceptional case" may "another jurisdiction . . . exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." Brown v. Lockheed Martin Corp., 814 F.3d at 627 (internal quotation marks omitted).

Here, none of the defendants is incorporated in or maintains its principal place of business in New York. Moreover, plaintiffs do not argue this is the "truly exceptional case" where each defendant is nevertheless "at home" in New York. Instead, plaintiffs contend each defendant is subject to general personal jurisdiction in New York on a theory of consent by registration with the State of New York. That is, they argue that "because Defendants have registered with the New York Department of State, and have designated an agent to receive process in New York, they have consented to general jurisdiction in this Court." (Doc. #38 at 3–4).

Defendants argue the consent-by-registration theory of general personal jurisdiction is no longer viable in light of Daimler.

Daimler "suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'— perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited," such as in this case. Brown v. Lockheed Martin Corp., 814 F.3d at 637. Indeed, because of the unclear constitutional status of the consent-by-registration theory in light of Daimler, the Second Circuit has explicitly avoided the issue. Id. at 640 ("[W]e decline to decide here whether consent to general jurisdiction via a registration statute would be similarly effective notwithstanding Daimler's strong admonition against the expansive exercise of general jurisdiction.").

Moreover, the Court agrees with defendants that, despite the uncertain status of the law in this area, a foreign defendant is not subject to the general personal jurisdiction of the forum state merely by registering to do business with the state, whether that be through a theory of consent by registration or otherwise. "After Daimler, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' the mere fact of [defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business." Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (holding that general jurisdiction does not exist over a corporation foreign to New York); accord, Bonkowski v. HP Hood LLC, 2016 WL 4536868, at *2–4 (E.D.N.Y. Aug. 30, 2016) (same).

Plaintiffs' arguments to the contrary are unconvincing. Most of the cases on which plaintiffs rely pre-date Daimler, and therefore the reasoning is incomplete and unpersuasive. Moreover, the post-Daimler cases do not meaningfully analyze the impact of this watershed case.

Plaintiffs principally rely on two cases: Bailen v. Air & Liquid Systems Corp., 2014 WL 3885949 (N.Y. Sup. Ct., Aug. 5, 2014), and Corporate Jet Support, Inc., v. Lobosco Insurance Group, L.L.C., 2015 WL 5883026 (N.Y. Sup. Ct., Oct. 7, 2015). However, these cases provide only short, conclusory arguments on the matter, which rely exclusively on one sentence of dicta in Beach v. Citigroup Alternative Investments LLC, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Beach"). Moreover, the dicta in Beach relies on unpersuasive and potentially invalidated cases.

Plaintiffs quote Beach for the proposition that "[n]otwithstanding the[] limitations [of Daimler], a corporation may consent to jurisdiction in New York . . . by registering as a foreign corporation and designating a local agent."[3] (Doc. #38 at 4, quoting 2014 WL 904650, at *6) (emphasis and alterations in plaintiffs' brief). Beach identifies three cases to support this proposition: Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 170 (1939); Application of Amarnick, 558 F.2d 110, 113 (2d Cir. 1977); and Rockefeller University v. Ligand Pharmaceuticals Inc., 581 F. Supp. 2d 461, 466 (S.D.N.Y. 2008). But these cases all precede Daimler, and therefore do not address whether the consent-by-registration theory remains a valid basis for general personal jurisdiction. Moreover, Beach, which of course is not binding on this Court, does not consider the possibility that Daimler potentially invalidated the consent-by-

---

[3]    This quoted language is quintessential dicta, as the court stated it in a substantively unrelated discussion about a foreign corporation that did not register with the state, and the court therefore held that it lacked jurisdiction over that defendant. Thus, the validity of the consent-by-registration theory was not at issue in Beach.

registration theory for general personal jurisdiction. Thus, these cases fail to persuade the Court that the registration-by-consent theory is still valid, and the Court declines to follow the <u>dicta</u> in <u>Beach</u>.

Next, plaintiffs argue <u>Bailen v. Air & Liquid Systems Corp.</u>, 2014 WL 3885949, at *4–5, is also instructive. There, the court stated that <u>Daimler</u> "does not change the law with respect to personal jurisdiction based on consent," citing <u>Beach</u>, 2014 WL 904650, at *6, without further analysis. As explained above, the quoted language in <u>Beach</u> is plainly <u>dicta</u> unsupported by persuasive authority.

Similarly, plaintiffs rely on <u>Corporate Jet Support, Inc., v. Lobosco Insurance Group, L.L.C.</u>, 2015 WL 5883026, at *2. This case does not meaningfully discuss <u>Daimler</u>'s impact on the consent-by-registration theory or otherwise argue in favor of allowing general personal jurisdiction to exist via the consent-by-registration theory.

For the foregoing reasons, the Court holds it cannot exercise general personal jurisdiction over these foreign defendants merely because defendants registered to do business in New York and designated a local agent in the state. Thus, the Court does not have general personal jurisdiction over any of the defendants.

Having decided the Court has specific personal jurisdiction over defendant Whirlpool with respect to plaintiff Famular's claims, the Court now turns to the issue of pendent personal jurisdiction. Plaintiffs contend this Court can and should exercise pendent personal jurisdiction over Whirlpool to hear all claims, including claims by the non-New York plaintiffs regarding Whirlpool's conduct that is unrelated to New York. Not surprisingly, Whirlpool contends this Court cannot and should not exercise pendent personal jurisdiction over these claims.

The Court agrees with Whirlpool that it cannot exercise pendent personal jurisdiction, but on a different basis than Whirlpool asserts.

Whirlpool argues pendent personal jurisdiction requires the existence of a federal cause of action before the Court can exercise pendent personal jurisdiction over state-law claims: "Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant."  (Doc. #40 at 7, quoting Baylis v. Marriott Corp., 843 F.2d 658, 663–64 (2d Cir. 1988)).  Although this may be the traditional application of pendent jurisdiction, it is not necessarily the only application, an issue Whirlpool does not address.

No party cites any case approving of the non-traditional application of pendent personal jurisdiction sought here, where a foreign defendant, subject to specific personal jurisdiction with respect to state law claims brought pursuant to the law of the forum state, contests pendent personal jurisdiction with respect to state law claims brought by other plaintiffs pursuant to the laws of non-forum states.

Despite this lack of direction to apposite cases, the Court finds guidance in DeMaria v. Nissan North America, Inc., 2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ("DeMaria"), and Tulsa Cancer Institute, PLLC v. Genentech Inc., 2016 WL 141859 (N.D. Okla. Jan. 12, 2016) ("Tulsa Cancer Institute").  Although neither case is binding, both are persuasive.

In DeMaria, seventeen plaintiffs from sixteen different states, including Illinois, sued defendant Nissan North America (a California corporation headquartered in Tennessee) in the federal court in Illinois, asserting products liability claims under the laws of various states.  As a foreign corporation, Nissan was not subject to the forum's general jurisdiction; however, plaintiff DeMaria's cause of action arose in her state of residency, Illinois, where she purchased the

product, subjecting Nissan to specific personal jurisdiction for DeMaria's claims.[4]  The non-Illinois plaintiffs argued that pendent personal jurisdiction existed over Nissan with respect to their claims.  After noting the facts did not present the typical case, the court analyzed whether pendent personal jurisdiction nevertheless existed:

> Under the circumstances of this case, where each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois, imposing personal jurisdiction for all of the claims because specific jurisdiction may lie as to [DeMaria's] claims would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis.  Given the current allegations, the Court is not persuaded that pendent personal jurisdiction is established simply because specific jurisdiction may exist as to DeMaria's claims.

DeMaria, 2016 WL 374145 at *8.

Similarly, in Tulsa Cancer Institute, a federal district court in Oklahoma addressed this same issue where a plaintiff from Oklahoma sued there, along with six other plaintiffs from six other states, based on the foreign defendant's marketing and distribution of a cancer-treatment drug.  As in DeMaria, and after considerable discussion, the court held that neither specific personal jurisdiction nor pendent personal jurisdiction allowed it to hear plaintiffs' claims against the foreign defendant based on defendant's actions occurring solely outside the forum state.  2016 WL 141859 at *4.

The Court finds the reasoning in DeMaria and Tulsa Cancer Institute persuasive.  Moreover, even if the Court had discretion to exercise pendent personal jurisdiction over the

---

[4]  "The [complaint] alleges that DeMaria is the only plaintiff who purchased her car in Illinois and the only plaintiff whose claim can fairly be said to arise out of any activity taking place in, or directed at, Illinois.  The [complaint] does not allege that anything [Nissan] did in Illinois had anything to do with any of the other plaintiffs' claims, or that any of their claims arose out of activities by [Nissan] tied to Illinois. . . .  Even with a liberal construction, the current allegations of the [complaint] fail to provide a sufficient basis for asserting personal jurisdiction as to the remaining plaintiffs' claims."  Id. at *7.

non-New York plaintiffs' non-New York claims against Whirlpool based on facts unrelated to New York, the Court declines to do so here. Accordingly, the claims of plaintiffs Frank, Furlong, Newman, Adams, Spahr, Seay, Moulton, and LeMay are all dismissed for lack of personal jurisdiction. The only surviving claims are Famular's claims against Whirlpool.

III.    Statute of Limitations

Having properly pared the viable parties and claims, leaving only Famular's claims against Whirlpool based on New York law, the Court turns to Whirlpool's arguments that some or all of Famular's claims are time-barred, namely that (i) New York does not recognize cross-jurisdictional tolling; (ii) cross-jurisdictional tolling, even if applicable, does not toll the statute of limitations for claims not brought in Dzielak; and (iii) cross-jurisdictional tolling does not apply to successive class actions.

A.    Cross-Jurisdictional Tolling

"[A] federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction." Casey v. Merck & Co., 653 F.3d 95, 100 (2d Cir. 2011). The parties agree the crux of the matter is whether New York recognizes such cross-jurisdictional tolling. Cross-jurisdictional tolling is conceptually based on American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), which held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." Id. at 554. Unlike American Pipe tolling, which applies only to cases with federal question jurisdiction over federal claims, cross-jurisdictional tolling is "a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the filing of a class action in another jurisdiction." Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450,

515 (S.D.N.Y. 2001), abrogated on other grounds by Casey v. Merck & Co., 653 F.3d 95. If New York does not recognize cross-jurisdictional tolling, then Dzielak does not toll the statutes of limitations regarding Famular's claims, and Famular's claims are time-barred.

Although New York courts recognize tolling when the prior case was also filed in New York, this Court is not aware of a New York state court that has addressed whether New York recognizes tolling based on a case filed outside New York. See, e.g., Soward v. Deutsche Bank AG, 814 F. Supp. 2d 272, 281 (S.D.N.Y. 2011). Whirlpool argues the Court should follow a line of federal cases refusing to apply cross-jurisdictional tolling because New York courts have not recognized cross-jurisdictional tolling. See, e.g., id.; In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 995 F. Supp. 2d 291 (S.D.N.Y. 2014), aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C., 829 F.3d 173 (2d Cir. 2016). For his part, Famular relies on In re LIBOR-Based Financial Instruments Antitrust Litigation, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015), on reargument in part, 2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016).

The Court agrees with Famular.

Whirlpool and the bulk of the contrary authority relies on a presumption against cross-jurisdictional tolling. But the reasoning underlying this presumption is unpersuasive.

First, some courts have suggested that a federal court should not impose a legal doctrine where the state courts have not determined an uncertain issue. See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 995 F. Supp. 2d at 312 ("Judges in this district have declined to recognize cross-jurisdictional tolling under state law, because such tolling can be applied only if it is clearly recognized by authoritative state courts."). This is sometimes explained by "a concern over federal interference with state policy." In re LIBOR-Based Fin.

15

Instruments Antitrust Litig., 2015 WL 6243526, at *141 (citing Soward v. Deutsche Bank AG, 814 F. Supp. 2d at 281–82).

But this reasoning is unsound because it ignores the federal courts' duty in these cases. As the Second Circuit has repeatedly instructed, when New York's courts have not decided an issue of state law, it is the federal court's "job to predict how the New York Court of Appeals would decide the issue[]." Amerex Grp., Inc. v. Lexington Ins. Co., 678 F.3d 193, 200 (2d Cir. 2012) (quoting DeBella v. Hopkins, 403 F.3d 102, 111 (2d Cir. 2005) (alteration and internal quotations omitted). Since it is the federal courts' "duty . . . to predict accurately what the high court of a particular state would do in the same circumstance, [they] fail equally in this duty when [they] erroneously dismiss a case that the state courts would sustain as [they] do when [they] erroneously sustain a case that a state courts would dismiss." In re LIBOR-Based Fin. Instruments Antitrust Litig., 2015 WL 6243526, at *141. Thus, the Court would be ignoring its duty by adopting a presumption against imposing a legal rule the state courts have not addressed without a reasoned basis for doing so.

Second, Whirlpool argues the Court should not recognize cross-jurisdictional tolling based on docket-control concerns. In In re LIBOR-Based Financial Instruments Antitrust Litigation, the court convincingly explains that the justification for rejecting cross-jurisdictional tolling—namely, "a risk that a state will attract individual out-of-state plaintiffs after a failed federal class action"—is unpersuasive, at least in New York. 2015 WL 6243526, at *139. New York's "borrowing rule" for statutes of limitations renders untimely claims brought by an out-of-state plaintiff whose home-state's statute of limitations has run. Thus, cross-jurisdictional tolling would not create any incentive for out-of-state plaintiffs to bring otherwise untimely claims in New York courts.

Third, the increased difficulty in obtaining personal jurisdiction over foreign defendants, as demonstrated above, further alleviates docket-control concerns that other courts have used to reject cross-jurisdictional tolling.  Id. at 140 ("Personal jurisdiction may also bar many claims filed by non-resident plaintiffs against non-resident defendants.").

 For the reasons explained herein and in In re LIBOR-Based Financial Instruments Antitrust Litigation, 2015 WL 6243526, at *138–147, the Court predicts the New York Court of Appeals would apply cross-jurisdictional tolling.

B.     Cross-Jurisdictional Tolling's Impact on Claims Not Brought in Dzielak

Whirlpool contends that even if New York courts recognized cross-jurisdictional tolling, such tolling would apply only to claims that were brought in the first class action.  Whirlpool argues that, if the identical claims were not brought in the prior case, then defendants are deprived of fair notice.  Whirlpool thus argues that Famular's statutory consumer-protection claims are time-barred because such claims were not asserted in Dzielak and, therefore, it was not on notice of these claims.

Whirlpool's contention is both wrong and disingenuous.

It is wrong because Whirlpool misunderstands the prerequisites for notice regarding the New York consumer-protection claims.  These exact claims need not have been brought in the prior suit; it is sufficient that they arise from the same basic facts and rely on the same basic legal theories.  See, e.g., Cullen v. Margiotta, 811 F.2d 698, 720–21 (2d Cir. 1987), overruled on other grounds, Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987); In re LIBOR-Based Fin. Instruments Antitrust Litig., 2015 WL 6243526, at *147–48.

It is disingenuous because Whirlpool's other arguments demonstrate it was, in fact, on notice.  For example, Whirlpool begins the introduction to its memorandum in support of its

motion to dismiss: "This is a copycat class action. More than four years ago, the same lawyers who filed this class action filed a virtually identical class action." (Doc. #33 at 11). Whirlpool cannot have it both ways. Its representation that "[t]his is a copycat class action" which is "virtually identical" to the prior class action demonstrates that Whirlpool was on notice of the claims asserted here.

      C.     <u>Cross-Jurisdictional Tolling's Applicability to Successive Class Actions</u>

Next, Whirlpool contends that even if New York courts recognized cross-jurisdictional tolling, plaintiffs' statutory consumer-protection claims are time-barred because such tolling does not apply to successive class actions.

The Court disagrees.

The only binding case on which Whirlpool relies is <u>Korwek v. Hunt</u>, 827 F.2d 874 (2d Cir. 1987), which is clearly inapposite. As Famular notes, the court in <u>Korwek v. Hunt</u> explicitly stated that the facts did not present, and the court did not consider, the present issue—a situation in which plaintiffs withdrew themselves from the class prior to certification. Instead, the <u>Korwek</u> court analyzed a situation where the appellants had previously been excluded from a class via judicial order, as the class had been judicially certified to exclude the appellants. Whirlpool does not address this material difference.

Here, the <u>Dzielak</u> plaintiffs voluntarily narrowed their class before certification. Therefore, there is no concern that Famular's suit is "merely an attempt to reargue the prior class certification motion," which was the basis for denying tolling in <u>Korwek v. Hunt</u>, 827 F.2d at 876.

Moreover, tolling the statute of limitations supports the justification for class actions. "<u>American Pipe</u> tolling of the limitations period guards the principal function of the class action

suit—the fair and efficient adjudication of common claims aggregated in one suit." Phipps v.

Wal-Mart Stores, Inc., 792 F.3d 637, 643 (6th Cir. 2015). The class action policy of avoiding

numerous different suits is undermined if the Court disallowed tolling for successive class

actions. Id. at 643–44. This would either (i) cause class members to file protective class actions

before certification is decided or withdrawn, or (ii) cause individual class members to bring

individual suits after they are no longer included in the class. Neither of these results is

desirable, and both are avoided by tolling the statute of limitations for successive class actions.

Accordingly, Dzielak tolls the statutes of limitations here, such that the claims of Famular

and the class of individuals he purports to represent are timely.

IV.    Failure to State a Claim Under Rule 12(b)(6)

Whirlpool next contends the Court must dismiss Famular's claims for breach of express

warranty and unjust enrichment under New York law for failure to state both claims.

The Court disagrees.

A.    Breach of Express Warranty

Whirlpool argues Famular's breach of express warranty claim must be dismissed for lack

of privity. Famular responds that privity is not required when the claimed warranty is made in

public advertising or sales literature.

New York law does not require privity when a breach of express warranty is "based on

misrepresentations contained in 'public advertising or sales literature.'" Weisblum v. Prophase

Labs, Inc., 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015) (quoting Prue v. Fiber Composites, LLC,

2012 WL 1314114, at *9 (E.D.N.Y. Apr. 17, 2012)); see also Randy Knitwear, Inc. v. Am.

Cyanamid Co., 11 N.Y.2d 5, 8–16 (1962) (holding that privity is not required to maintain an

action against a manufacturer for breach of express warranty).  Whirlpool does not contest Famular's argument that it used the ENERGY STAR® label in public advertising.

Accordingly, the motion to dismiss the breach of express warranty claim is denied.

B.    Unjust Enrichment

Similarly, Whirlpool argues Famular's unjust enrichment claim must be dismissed because Famular alleges he conferred a benefit on Whirlpool only indirectly; Famular did not buy the machine from Whirlpool, but rather from an appliance retailer.

New York law does not require plaintiff to have conferred a direct benefit on defendant to state a claim for unjust enrichment.  Rather, the law requires only "that the plaintiff's relationship with a defendant not be 'too attenuated.'"  Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010).  Thus, "the indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the product itself."  Id. (citing Cox v. Microsoft Corp., 8 A.D.3d 39, 40–41 (1st Dep't 2004)).

Accordingly, the motion to dismiss the unjust enrichment claim is denied.

**CONCLUSION**

Home Depot's motion to dismiss is GRANTED.  (Doc. #29).

Whirlpool, Lowe's, and Sears's motion to dismiss is GRANTED IN PART and DENIED IN PART.  It is DENIED only with respect to Famular's four claims against Whirlpool.  It is GRANTED regarding all other claims by all other plaintiffs.  (Doc. #32).

The Clerk is instructed to terminate defendants Lowe's Home Centers, LLC; Home Depot, U.S.A, Inc.; and Sears Holdings Corporation; and plaintiffs Howard Frank, Nancy Furlong, John Newman, Sherry Adams, Richard Spahr, William David Seay, Darla Moulton, and Karin LeMay.

The Clerk is further instructed to terminate the motions.  (Docs. ##29, 32).

**INTERLOCUTORY APPEAL**

For the reasons set forth on the record at a conference held today, the Court concludes that the order denying Whirlpool's motion to dismiss Famular's claims on the ground that those claims are time-barred "involves . . . controlling question[s] of law as to which there [are] substantial ground[s] for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. 1292(b). Accordingly, the Court certifies that interlocutory order for appeal.

Dated: June 6, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge