UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WALT FAMULAR, individually and on behalf  :
of all others similar situated,                               :
                                       Plaintiffs,         :
                                               :                   **OPINION AND ORDER**
v.                                                                      :
                                               :                   16 CV 944 (VB)
WHIRLPOOL CORPORATION,                          :
                               Defendant.          :
--------------------------------------------------------------x

Briccetti, J.:

     Plaintiff Walt Famular, individually and on behalf of all others similarly situated, brings

this action against defendant Whirlpool Corporation for allegedly misrepresenting the water and

energy efficiency of three models in Whirlpool's Maytag Centennial line of washing machines.

Plaintiff brings state law claims for breach of express warranty, unjust enrichment, and violations

of New York's General Business Law ("GBL") Sections 349 and 350.

     Now pending is plaintiff's motion for class certification.  (Doc. #89).  For the following

reasons, the motion is GRANTED IN PART and DENIED IN PART.

     Also pending are defendant's motions (i) to exclude the opinions of plaintiff's experts Dr.

J. Michael Dennis and Dr. Ramamirtham Sukumar (Doc. #100); (ii) to strike certain opinions

offered by plaintiff's expert Dr. Colin Weir (Doc. #103); and (iii) for reconsideration of the

Court's January 19, 2017 Opinion and Order (Doc. #113).  The motions to exclude or strike the

opinions of plaintiff's experts are DENIED WITHOUT PREJUDICE, and the motion for

reconsideration is DENIED, for the reasons set forth below.

     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

# BACKGROUND

     This case arises from the purchase of Whirlpool's Maytag Centennial line of residential

washing machines, with model numbers MVWC6ESWW1, MVWC6ESWW0, and MVWC7ESWW0 (the "allegedly mislabeled washing machines") in New York from 2009 to the present.[1]  The allegedly mislabeled washing machines were marketed as ENERGY STAR® compliant and displayed the ENERGY STAR® label.  Plaintiff purchased an allegedly mislabeled washing machine in 2010.

The ENERGY STAR® program is administered by the United States Department of Energy and the United States Environmental Protection Agency and is intended "to identify and promote energy-efficient products . . . to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products . . . that meet the highest energy conservation standards."  42 U.S.C. § 6294a.   To that end, to qualify for the ENERGY STAR® program, residential washing machines must meet energy- and water-efficiency criteria, using approximately 37% less energy and 50% less water than standard models.

In July 2010, the Department of Energy clarified its guidance on how to calculate ENERGY STAR® qualifications for washing machines.  See 77 Fed. Reg. 13888, 13917.  Thereafter, the Department of Energy tested the allegedly mislabeled washing machines to ensure compliance with ENERGY STAR® standards.  In 2012, the allegedly mislabeled washing machines were disqualified from the ENERGY STAR® program because results

---

[1]      Plaintiff was a member of a putative nationwide class in Dzielak v. Whirlpool Corp., Case No. 2:12-cv-00089-KM-JBC, filed on January 5, 2012, in the United States District Court for the District of New Jersey.  On February 5, 2016, the Dzielak plaintiffs voluntarily narrowed their proposed class by seeking certification of only seven state classes, not including New York. On February 8, 2016, plaintiff and seven other Dzielak plaintiffs from various states filed the complaint in this case, amending the complaint on March 9, 2016 (Doc. #5).  By Opinion and Order dated January 19, 2017, the Court dismissed the seven non-New York plaintiffs for lack of personal jurisdiction.  (Doc. #45).  The only surviving claims are plaintiff's claims against Whirlpool.

showed these models failed to meet ENERGY STAR® standards.

The crux of plaintiff's case is that plaintiff and the proposed class members were injured when they (i) paid a premium for the ENERGY STAR® qualification when, in reality, the washing machines did not meet ENERGY STAR® standards, and (ii) purchased washing machines that resulted in higher than anticipated utility bills over their lifetime.

**DISCUSSION**

I.   <u>Legal Standard</u>

To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class meets the four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>see</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 345 (2011).  A plaintiff must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. at 345.

The Supreme Court has cautioned that "Rule 23 does not set forth a mere pleading standard."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. at 350.  Instead, "[t]he party seeking 'class certification must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met."  <u>In re Am. Int'l Grp., Inc. Sec. Litig.</u>, 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. at 350).  "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 34 (2013) (quotation

marks and citations omitted).

II.      Rule 23(a) Factors

         A.      Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable."  Courts in the Second Circuit have found this requirement met by a class consisting of forty or more members.  See Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Defendant does not contest the numerosity requirement.  Plaintiff demonstrates 15,380 allegedly mislabeled washing machines were sold in New York.  These numbers suggest far more than forty individuals comprise the class; therefore, the numerosity requirement is met.

         B.      Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "Commonality is satisfied where a single issue of law or fact is common to the class."  In re IndyMac Mort.-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 359 ("[E]ven a single common question will do.") (quotation marks and brackets omitted)).  However, class certification requires not only "common questions," but "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350.

Defendant argues these "common answers" cannot be generated by the proposed class's questions.[2]

---

[2]      Defendant vigorously disputes that common questions predominate in the context of the additional class certification requirement under Rule 23(b)(3), but notes its arguments also apply to commonality under Rule 23(a).  Commonality under Rule 23(a), however, is less stringent than predominance under Rule 23(b)(3), and therefore, the Court will focus its attention on the predominance inquiry.  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 609 (1997).

But common questions abound:  whether the ENERGY STAR® logo was material to class members' decisions to purchase the washing machine at issue, and whether the class members paid a higher price for the washing machine because of the logo.  See Dzielak v. Whirlpool Corp., 2017 WL 6513347, at *5 (D.N.J. Dec. 20, 2017) ("Dzielak") (noting commonality is satisfied); Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (noting commonality is satisfied by whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label).  The determination of these common questions will certainly resolve issues central to the validity of plaintiff's and class members' claims.  Therefore, the commonality requirement is met.

      C.    <u>Typicality</u>

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 362, as recognized in Amara v. Cigna Corp., 775 F.3d 510 (2d Cir. 2014).  "Minor variations in the fact patterns underlying individual claims" do not preclude a finding of typicality.  Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993).  Instead, Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 132 (S.D.N.Y. 2014).

Here, the claims of the named plaintiff and the proposed class members arise from the same alleged misrepresentation—that the allegedly mislabeled washing machines failed to

comply with ENERGY STAR® standards.  Each class member will make similar legal arguments to prove defendant's liability, specifically that the ENERGY STAR® logo was material in their purchase, and as a result, they paid a higher price for the washing machine. Thus, all class members will marshal the same evidence and arguments in support of their claims.

Defendant argues the named plaintiff cannot meet the typicality requirement because he is subject to a unique standing defense atypical of the class.  According to defendant, plaintiff's purchase of a qualifying washing machine will be a factual dispute for the jury, because plaintiff's sales receipt and invoice show a different model number "MVWC6ES**V**W," not the "MVWC6ES**W**W" at issue here.  (See Doc. #107 ("Bellamy Decl.") Ex. CC (unintelligible receipt) & Ex. DD (purchase invoice showing -**V**W model but -**W**W on lid)).

Plaintiff can affirmatively demonstrate, however, by a preponderance of the evidence, that he purchased one of the washing machines at issue here, namely, the "MVWC6ESWW" model.  A photograph shows the washing machine itself is labeled with a qualifying model number.  (See Bellamy Decl. Ex. EE).  At his disposition, plaintiff testified he purchased a brand-new "MVWC6ESWW" model; he did not know why the model number on the invoice was different; and he offered his washing machine to defendant for an inspection.  (Plaintiff Dep. at 156–58, 164–65).  Notably, defendant does not argue plaintiff purchased a non-qualifying washer, much less that Whirlpool manufactured a "MVWC6ESVW" model washing machine. (See, e.g., Bellamy Decl. Ex. A at 12 (listing conventional washing machines' model numbers)). Nor did defendant choose to inspect plaintiff's washing machine.  Plaintiff has demonstrated, by a preponderance of the evidence, that he purchased a qualifying washing machine, and therefore, that he can overcome this potential defense.

D.    Adequacy

Under Rule 23(a)(4), the Court must examine whether the named plaintiff's interests "are antagonistic" to those of the other proposed members of the class.  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); see also Amchem Prods., Inc. v. Windsor, 521 U.S. at 625–26 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citations omitted)).  Class representatives must have a sufficient interest in the outcome of the case to ensure vigorous advocacy.  See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 413 (S.D.N.Y. 2004).  Plaintiff must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation."  In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted).

For the reasons discussed, the named plaintiff will serve as an adequate representative of the class.  He has demonstrated his commitment by assisting with the investigation, reviewing the complaint, and sitting for a lengthy deposition.  Nothing in the record suggests the named plaintiff's interests are antagonistic to those of the proposed class members.

In addition, class counsel are experienced and qualified class action lawyers.  Bursor & Fisher, P.A., "has been appointed class counsel in dozens of cases in both federal and state courts, and has won several multi-million dollar verdicts or recoveries."  See Ebin v. Kangadis Food Inc., 297 F.R.D. at 566.  Indeed, this Court appointed Bursor & Fisher, P.A., as class counsel in In re Scotts EZ Seed Litig., 304 F.R.D. 397, 407 (S.D.N.Y. 2015), in which, following settlement, final judgment was entered on December 19, 2018.

E.   <u>Ascertainability</u>

The Second Circuit has recognized a fifth pre-condition to class certification: "[t]he implied requirement of ascertainability."  <u>In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d 24, 30 (2d Cir. 2006).  "To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling."  <u>Charron v. Pinnacle Grp. N.Y. LLC</u>, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks omitted).  "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable."  <u>Ebin v. Kangadis Food Inc.</u>, 297 F.R.D. at 567.

Defendant does not dispute the ascertainability of the class, and the Court finds plaintiff's proposed class meets the ascertainability criteria.  Plaintiff proposes a class consisting of individuals who purchased the allegedly mislabeled washing machines in New York as well as a method by which to identify proposed class members from the records of defendant and four primary retailers and distributors in New York.  While proposed class members are more likely to retain a receipt for a big-ticket item like a washing machine than other everyday household products, plaintiff's proposed method properly accounts for the fact some may not have retained their receipts.  <u>See</u>, <u>e.g.</u>, <u>Forcellati v. Hyland's, Inc.</u>, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (certifying proposed class of individuals who purchased homeopathic products although "purchasers likely have not retained proof of purchase"); <u>McCrary v. Elations Co.</u>, 2014 WL 1779243, at *7–9 (C.D. Cal. Jan. 13, 2014) (finding ascertainable a proposed class of individuals who purchased over-the-counter supplement bearing the claim "clinically-proven" despite the likelihood of lack of proof of purchase).  This definition and proposed method is sufficiently specific to satisfy the ascertainability requirement.

In sum, plaintiff has satisfied all four requirements of Rule 23(a), and the additional

implied requirement of ascertainability.

III.     Rule 23(b)(2)

If Rule 23(a) is satisfied, Rule 23(b)(2) provides for certification when "final injunctive

relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To the extent

plaintiff seeks to have defendant remove the ENERGY STAR® label from the allegedly

mislabeled washing machines, defendant stopped manufacturing the washing machines more

than seven years ago. It is not clear what additional injunctive relief plaintiff seeks. Thus,

certification of a 23(b)(2) class does not appear necessary. See Spagnola v. Chubb Corp., 264

F.R.D. 76, 98 (S.D.N.Y. 2010) (declining to certify a Rule 23(b)(2) class when the challenged

"language ha[d] already been eliminated").

IV.     Rule 23(b)(3) Factors

A class may be certified under Rule 23(b)(3) if the Court finds "the questions of law or

fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A.     Predominance

Rule 23(b)(3) requires only "a showing that questions common to the class predominate,

not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v.

Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 459 (2013) (emphasis in original). However, a

district court has a "duty to take a close look at whether common questions predominate over

individual ones." Comcast Corp. v. Behrend, 569 U.S. at 34 (quotation marks omitted). "Class-

wide issues predominate if resolution of some of the legal or factual questions that qualify each

class member's case as a genuine controversy can be achieved through generalized proof, and if

9

these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

          1.     Classwide Theories of Injury

Plaintiff bring several different claims for relief, each of which requires slightly different proof.  While each of plaintiff's claims for relief will be analyzed in turn to ensure classwide evidence predominates, see, e.g., Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 481 (C.D. Cal. 2012), on reconsideration, 2012 WL 2458118 (C.D. Cal. June 25, 2012), plaintiff seeks to proceed under two main theories of injury:  proposed class members were injured because (i) they overpaid or paid a premium for the allegedly mislabeled washing machine ("price premium"), and (ii) they did not receive the promised energy savings and incurred higher utility bills as a result ("energy expense").  Because the viability of these theories affect all of plaintiff's claims, they will be analyzed first.

          a.     Price Premium

Defendant argues plaintiff's price premium theory is not appropriate for certification, because (i) determining whether the proposed class members paid a premium would necessarily require an individualized inquiry, and in any event, (ii) common evidence shows proposed class members did not actually pay a premium for the allegedly mislabeled washing machines.

The Court disagrees.

The question whether proposed class members were injured by overpayment can be answered with classwide evidence.  See, e.g., Kurtz v. Kimberly-Clark Corp., 321 F.R.D. 482, 549 (E.D.N.Y. 2017) (certifying class and finding common questions predominate for price premium theory of injury); Ebin v. Kangadis Food Inc., 297 F.R.D. at 568–69 (same); see also In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig., 722 F.3d 838, 857 (6th Cir. 2013)

("Because all Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class.") (emphasis in original), cert. denied sub nom. Whirlpool Corp. v. Glazer, 571 U.S. 1196 (2014).  Here, plaintiff offers defendant's internal documents, public statements, and retail sales figures to demonstrate the allegedly mislabeled washing machines commanded a premium price.[3]

Even if each purchaser's exact premium differed by retailer and date of purchase, all proposed class members need not pay an identical premium for common questions to predominate at the certification stage.  See Butler v. Sears, Roebuck & Co., 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages.").  Not only is this argument premature, but it confuses a theory of injury with a damages calculation.

Defendant argues even if classwide evidence could conceivably show a price premium; in reality, such evidence actually demonstrates the opposite:  an allegedly comparable non-ENERGY STAR® washing machine (model no. MVWC500, or the "C500") sold at a higher price, on average, than one ENERGY STAR® washing machine at issue here.  Again, this argument is premature.  Rule 23(b)(3) requires only that common questions can be answered, "not that those questions will be answered, on the merits, in favor of the class."  Amgen Inc. v.

---

[3]      E.g., Doc. #90 ("Deckant Decl.") Ex. 6 at 13 (2008 Whirlpool presentation estimating a $200 "initial purchase price premium" for ENERGY STAR® washing machines); Deckant Decl. Ex. 7 at 3 (2008 investor call transcript, noting "there is a slight premium that customers will pay for energy appliances"); Deckant Decl. Ex. 8 at 13 (2009 Whirlpool presentation showing a generally higher purchase price for ENERGY STAR® appliances); Deckant Decl. Ex. 9 at 8 (2009 investors' conference transcript, noting purchasers "pay a little bit more on the front end" for energy efficient models).

Conn. Ret. Plans & Tr. Funds, 568 U.S. at 459.  Moreover, putting aside the baseline question whether those washers are in fact comparable, defendant's argument is misleading—purchasers paid more for the ENERGY STAR® washer in nineteen of twenty months at Home Depot and nine of eleven months at Lowe's.  The lower average price of the ENERGY STAR® washer resulted from a few months of deep discounts from Black Friday promotions around November 2009.  (See Scott Rep. ¶ 79 n.105).  Therefore, whether the proposed class members were injured by paying a premium price for the allegedly mislabeled washing machines can be established by common proof.

b.    Energy Expense

Plaintiff's energy expense theory of injury, however, is ill-suited for certification.  There is simply no indication that common evidence can sufficiently demonstrate classwide injury to proposed class members through increased utility bills.

Plaintiff argues proposed class members were injured when the allegedly mislabeled washing machines did not provide the promised energy savings and members incurred higher utility bills as a result.  To demonstrate that injury, plaintiff first finds the "additional energy use" by comparing what was allegedly promised by the ENERGY STAR® standard and what the Department of Energy found the allegedly mislabeled washing machines actually used in a 2010 test.  Dr. Weir assumes that all proposed class members performed 392 cycles a year.[4]  (See Doc. #91 ("Weir Decl.") ¶¶ 9–14).  After determining the "additional energy use," Dr. Weir multiplied it by current and historic New York electricity and water prices over the eleven-year lifespan of the washing machine to calculate the energy expense damages.  (Id. ¶¶ 15–19).

_____

[4]    Dr. Weir states he uses 392 cycles because it was the number "specified by" the Code of Federal Regulations that was used, in part, to generate the energy guide labels presented to the class.  (Doc. #98 ("Weir Rebuttal Decl.") ¶ 98).

12

The problem—which the <u>Dzielak</u> court pointed out and with which this Court agrees—is that plaintiff has not demonstrated that common questions predominate over individualized inquiries. <u>Dzielak</u>, 2017 WL 6513347, at *11.  "Many factors determine the energy and water costs for each putative plaintiff.  Plaintiffs used different temperature and cycle settings, fill levels, and utility companies."  <u>Id</u>.  The differences are apparent from simply looking to the number of annual wash cycle by certain users.  For example, in plaintiff's deposition, he said he ran his washing machine 260 times per year.  (Def. Br. at 24 n.19).  In the <u>Dzielak</u> action, plaintiff Reid performed 52 cycles a year, plaintiff Parsons performed 130 cycles a year, plaintiff Maxwell performed 546 cycles a year.  <u>Dzielak</u>, 2017 WL 6513347 at *12 n.13.  Plaintiff does not even attempt to rely on proposed class members' utilities bills in support—because utility bills do not break out energy use by appliance.  Plaintiff has not demonstrated that energy expense injury can be shown through generalized proof without the need for individual inquiries of every proposed class member.

Without demonstrating proposed class members were similarly situated, plaintiff seeks to use "representative" evidence to show injury and damages on a classwide basis.  Representative evidence is proper if a plaintiff could rely on the representative evidence if he or she brought an individual action. <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1043, 1046–47 (2016) (allowing representative evidence of the time employees spent donning and doffing protective gear based on an expert's calculation after viewing 744 videotaped observations).  However, representative evidence is not always appropriate.  In <u>Wal–Mart Stores, Inc. v. Dukes</u>, the Court denied certification on commonality grounds when plaintiffs proposed using a "sample set of the class members" to determine valid claims and damages, and then apply that finding proportionately against defendant for all class members.  564 U.S. at 367.  Such a use of

representative evidence was simply "trial by formula." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. at 1048 (alterations omitted). As Tyson explained: "The underlying question in Wal–Mart, as here, was whether the sample at issue could have been used to establish liability in an individual action. Since the Court held that the employees were not similarly situated, none of them could have prevailed in an individual suit by relying on depositions detailing the ways in which other employees were discriminated against by their particular store managers." Id. (emphasis added).

Plaintiff has not shown that proposed class members' individual use (and resulting energy expense) was comparable enough to justify the use of representative evidence. As the Dzielak Court noted, it is much more problematic to compare the "individual variability in the energy use by owners of washers" than it is to compare the time it takes for trained and experienced employees to change into the same protective clothing gear. Dzielak, 2017 WL 6513347 at *12. It seems unlikely that in an individual action, a plaintiff who ran his washing machine 52 times a year could rely on representative evidence based on 392 cycles a year.

Accordingly, the Court finds common questions do not predominate as to plaintiff's energy expense theory.

    2. <u>Plaintiff's Claims</u>

      a. <u>GBL Sections 349 and 350</u>

GBL Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To establish a prima facie case under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d

518, 521 (2d Cir. 2000).  GBL Section 350 prohibits "[f]alse advertising in the conduct of any

business . . . or in the furnishing of any service" in New York.  "The standard for recovery under

[Section] 350, while specific to false advertising, is otherwise identical to [Section] 349."

Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002).  Neither Section 349 nor

350 requires proof of reliance.  See Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941

(2012); Petrosino v. Stearn's Prod., Inc., 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018).[5]

Defendant does not dispute its acts were directed at consumers, and as discussed,

common questions predominate for plaintiff's price premium theory of injury.  Defendant argues

individualized inquiries will outweigh common evidence in determining whether consumers

found the labels materially misleading.

The Court disagrees.

Materiality under Sections 349 and 350 is an objective inquiry; a deceptive act is defined

as one "likely to mislead a reasonable consumer acting reasonably under the circumstances."

Maurizio v. Goldsmith, 230 F.3d at 521.  Thus, consumers do not have to prove that they

actually relied on a misrepresentation.

Defendant nonetheless argues classwide evidence cannot be used to satisfy the

materiality requirement, because determining whether a reasonable consumer found the

ENERGY STAR® logo misleading necessarily depends on each individual purchaser's date of

---

[5]     Defendant argues proof of individualized reliance is necessary for Section 350 claims,
relying on a First Department decision and other non-binding precedent.  This Court disagrees.
The Court of Appeals noted plainly, "To the extent that the Appellate Division order imposed a
reliance requirement on General Business Law §§ 349 and 350 claims, it was error.   See Koch v.
Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012) (emphasis added).  The court relied on
its earlier decision in Small v. Lorillard Tobacco Co., which, in parsing a Section 350 claim,
noted "[i]ntent to defraud and justifiable reliance by the plaintiff are not elements of the statutory
claim."  94 N.Y.2d 43, 55 (1999) (noting, however, that reliance was necessary for plaintiff's
common-law fraud claim).

purchase.  Defendant maintains a jury could find the ENERGY STAR® logo was materially misleading only after the Department of Energy reinterpreted the term "clothes container" on July 6, 2010, or after the Department of Energy concluded defendant's washing machines did not meet the revised ENERGY STAR® criteria on January 19, 2011.  Defendant further argues it has a "safe harbor" defense against the proposed class members who bought the washing machine before the Department of Energy reinterpreted the term or disqualified the allegedly mislabeled washing machines.  See N.Y. GBL Section 349(d) ("[I]t shall be a complete defense that the act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by . . . any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by . . . such department, division, commission or agency or the federal courts.").

As a general matter, materiality under Sections 349 and 350 is an objective question that does not depend on the mindset of each individual purchaser.  Indeed, the Supreme Court has held that materiality "is a question common to all members of the class" when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. at 459 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class.").  Therefore, whether the ENERGY STAR® logo was misleading before or after a certain date, will not call for individualized factual determinations.  See Dzielak, 2017 WL 6513347, at *17.  It is a question that can be answered with common proof and applied to the class.  Cf. Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 539 (2d Cir. 2016) (individualized inquiries predominate when individualized inquiries cannot be answered with generalized proof).  The same rationale applies to defendant's safe harbor defense:  the viability of the defense does not

16

depend on facts particular to each proposed class member's case.  See In re Visa
Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (noting the presence of
affirmative defenses does not automatically render class certification inappropriate).

If a factfinder's determination later bars claims by some proposed class members because
of the date of purchase, the Court "has available adequate procedural mechanisms."  Smilow v.
Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39–40 (1st Cir. 2003).  The application to the class itself
can be accomplished using "computer records, clerical assistance, and objective criteria—thus
rendering unnecessary an evidentiary hearing on each claim."  Souter v. Equifax Info. Servs.,
LLC, 307 F.R.D. 183, 214 (E.D. Va. 2015) (quoting 2 Newberg on Class Actions § 4:50 (5th
ed.)) (internal quotation marks omitted); see also Minns v. Advanced Clinical Emp. Staffing
LLC, 2015 WL 3491505, *8 (N.D. Cal. June 2, 2015) ("[T]he necessity of making individualized
factual determinations does not defeat class certification if those determinations are susceptible
to generalized proof like employment and payroll records.").

Therefore, common questions predominate over individualized inquiries in determining
whether consumers found the labels materially misleading.

Accordingly, plaintiff's claims under GBL Sections 349 and 350 may proceed.

b.    Breach of Express Warranty Claim

To state a claim for breach of express warranty under New York law, "a plaintiff must
allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance
on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty,
and (4) injury to the buyer caused by the breach."  Goldemberg v. Johnson & Johnson Consumer
Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).  A buyer must also "within a reasonable time after
he discovers or should have discovered any breach notify the seller of breach or be barred from

any remedy."  N.Y. U.C.C. § 2–607(3)(a).  Unlike the Sections 349 and 350 claims, breach of warranty claims require proof of reliance.  See Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010).

Under New York law, "a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue."  Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007); see also CBS Inc. v. Ziff–Davis Publ'g Co., 75 N.Y.2d 496, 503–04 (1990).  However, if a buyer actually had "full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty," the buyer cannot later assert a breach of warranty.  Galli v. Metz, 973 F.2d 145, 151 (2d Cir. 1992).  This is known as the "basis of the bargain conception of reliance for express warranty claims."  Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *11.

Under this conception of reliance, individual questions predominate because each proposed class member's knowledge of the truth or falsity of defendant's advertising claims requires evaluation.  Class certification is therefore inappropriate for these claims.  See, e.g., Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *11 (declining to certify a class claiming a violation of New York express warranty law because plaintiffs' "reliance on Snapple's 'All-Natural' label cannot be the subject of generalized proof"); Klein v. Robert's Am. Gourmet Food, Inc., 28 A.D.3d 63, 72 (2d Dep't 2006) (reversing lower court's decision that common questions predominated with respect to reliance in a New York express warranty claim).

Accordingly, the Court declines to certify plaintiff's claim for breach of express warranty.

c.    Unjust Enrichment Claim

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002). "Thus, plaintiffs must show that the benefits that the members of the plaintiffs' class received were less than what they bargained for." Weiner v. Snapple Beverage Corp., 2010 WL 3119452, at *10 (quoting Vigiletti v. Sears, Roebuck & Co., 838 N.Y.S.2d 785 (2d Dep't 2007)).

Class certification of unjust enrichment claims is appropriate when, as here, "the crux of plaintiffs' claims is that defendant unjustly retained the benefits of its sale of . . . products to consumers after it failed to disclose material facts about the defective nature of those products." See In re Scotts EZ Seed Litig., 304 F.R.D. at 412 (certifying unjust enrichment claims under California law) (quoting Cartwright v. Viking Indus., Inc., 2009 WL 2982887, at *13 (E.D. Cal. Sept. 14, 2009)). Defendant's argument that plaintiff has not demonstrated required restitution on a classwide basis is premature. Whether defendant was unjustly enriched at the proposed class members' expense by selling the allegedly mislabeled washing machines can succeed or fail on common evidence.

Accordingly, plaintiff's claim for unjust enrichment may proceed.

3.    Classwide Damages

Defendant argues plaintiff's proposed damages models are not tied to the proposed theories of liability, and thus, cannot support class certification. (Def. Br. at 20).[6]

---

[6]    Defendant also moves to exclude or strike the opinions of plaintiff's experts Dr. Dennis, Dr. Sukumar, and Dr. Weir under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993). The Second Circuit has not yet decided whether Daubert motions are appropriate at the class certification stage; however, Comcast requires the Court ensure that plaintiff's proposed damages methodologies match plaintiff's theories of liability. Comcast

To satisfy the predominance requirement, plaintiff must propose a damages model consistent with the proposed theory (or theories) of liability.  Comcast Corp. v. Behrend, 569 U.S. at 34.  A damages model must measure only damages attributable to plaintiff's theory of liability; "[i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of 23(b)(3)."  Id. at 35.

Because the Court has already determined plaintiff's energy expense theory of liability does not satisfy the predominance requirement, the Court examines plaintiff's two remaining damages models:  (i) statutory damages for violations of GBL Section 349 ($50) and Section 350 ($500); and (ii) price premium damages.  For the following reasons, the Court finds the models are adequately tied to plaintiff's theory of liability.

a.      Statutory Damages

Statutory damages are permissible in class actions alleging Sections 349 and 350 violations brought in federal court.  See Kurtz v. Kimberly-Clark Corp., 321 F.R.D. at 551 (noting statutory damages under section 349(h) are available on a class basis in federal court, even though they would be barred if the same action were to proceed in New York state court); Guido v. L'Oreal, USA, Inc., 2013 WL 3353857, at *16–17 (C.D. Cal. July 1, 2013) (same). The statutory damage calculation is the number of units sold in New York (15,380) multiplied by the $50 statutory minimum for GBL Section 349 violations and $500 statutory minimum for GBL Section 350 violations, which equals $769,000 and $7,690,000, respectively.

---

Corp. v. Behrend, 569 U.S. at 34–35.  Defendant's motions to exclude Dr. Dennis and Dr. Sukumar and to strike certain opinions offered by Dr. Weir are DENIED WITHOUT PREJUDICE; instead, the Court has considered whether each of Dr. Weir's proposed methodologies satisfies Comcast.

Accordingly, plaintiff's statutory damages model is consistent with the proposed theory of liability.

        2.    <u>Price Premium Damages</u>

Courts routinely reject price premium methodologies under <u>Comcast</u> when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement.  <u>See</u>, <u>e.g.</u>, <u>Brazil v. Dole Packaged Foods, LLC</u>, 2014 WL 2466559, at *16 (N.D. Cal. May 30, 2014), <u>class</u> <u>decertified</u> 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014); <u>Werdebaugh v. Blue Diamond Growers</u>, 2014 WL 2191901, at *23 (N.D. Cal. May 23, 2014), <u>class</u> <u>decertified</u>, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014).  These courts correctly point out consumers may pay a higher price for a product for many reasons that have nothing to do with specific advertising claims, including, for example, brand loyalty and product quality.

Plaintiff must be able to show the damages "stemmed from the defendant's actions that created the legal liability."  <u>In re POM Wonderful LLC</u>, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014).  In other words, plaintiff must demonstrate that defendant's alleged misrepresentations caused the proposed class members to pay a price premium that they otherwise would not have paid for the allegedly mislabeled washing machine in the absence of the misrepresentation.  <u>Id</u>.

Thus, for Dr. Weir's price premium model adequately to match plaintiff's theory of liability—that proposed class members were injured when they paid a premium for an allegedly mislabeled washing machine—Dr. Weir must show other features are <u>not included</u> in his calculation of the price premium.  Dr. Weir proposes three ways in which to calculate the price

premium:  (i) a 55.7% price premium purportedly calculated by Whirlpool;[7] (ii) a 48.5% price premium based on a continent valuation methodology, or (iii) a 44.3% price premium based on conjoint analysis.

The continent valuation methodology study is based on a consumer survey regarding the prices of washing machines labeled and sold as ENERGY STAR® compliant.  The 1,095 respondents were United States residents who purchased a top-loading washing machine after 2005.  The respondents' preference for an ENERGY STAR® labeled top-loading machine over a similar non-ENERGY STAR® machine was nearly unanimous.  The average respondent required an average 48.5% discount to buy the machine without the ENERGY STAR® label.

The conjoint survey, on the other hand, looks at how much the price of an ENERGY STAR® washing machine would need to be reduced to retain the same volume of sales without the ENERGY STAR® logo.  The 530 respondents repeatedly ranked various features of a hypothetical washing machine, including its ENERGY STAR® status, and then valued products containing only certain features they have already ranked by indicating how likely they are to purchase the hypothetical washing machine.  Each individual's valuation of these hypothetical washing machines was then analyzed specifically to compare ENERGY STAR® status.

These calculations, which are based on sound and accepted methodologies, seek to isolate the alleged damage that stemmed directly from defendant's alleged misrepresentation.  Thus, at this stage, Dr. Weir has identified statistical methodologies and demonstrated it is possible to isolate the price premium associated with the ENERGY STAR® label.

---

[7]     Although the Court has denied without prejudice defendant's motions to exclude or strike the opinions of plaintiff's experts at this stage of the case, the Court is highly dubious of defendant's purported calculation of a "55.7% price premium," because the Whirlpool document is undated, the author is unknown, and it depicts two contradictory premiums (66% in the text description and 55.7% in the chart).  (See Doc. #91 ("Weir Decl.") ¶ 32–34 & n.24).

Defendant argues the price premium damages theory does not match plaintiff's theory of liability, because it does not account for the value proposed class members actually received from the performance of the allegedly mislabeled washing machines.  In other words, defendant argues the proposed class cannot recover the entire cost of the price premium when some utilities savings were, in fact, delivered.  (Def. Br. at 21).

Plaintiff's theory of liability, however, does not turn on the performance of the washing machine.  Plaintiff alleges he paid the premium because the washing machine had an ENERGY STAR® logo.  See In re POM Wonderful LLC, 2014 WL 1225184, at *5 ("Plaintiffs must demonstrate, therefore, that Defendant's alleged misrepresentations caused Plaintiffs to pay a 'price premium' of $290 million more than Plaintiffs otherwise would have paid for Defendant's products in the absence of the misrepresentations.").  This an all-or-nothing theory—or as plaintiff describes it, a binary one.  Without the logo, plaintiff claims he would not have paid the price premium.

In sum, plaintiff's statutory and price premium damages models match plaintiff's theories of liability and satisfy Comcast.

B.      Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."  The Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendant does not dispute all four factors weigh in favor of class certification.  When, as

here, "proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions." Seijas v. Republic of Argentina, 606 F.3d at 58.  Additionally, while the Dzielak class action is already pending in the District of New Jersey, this action includes a proposed class only in New York, which is not a state represented in the Dzielak action.  See Bustillos v. Board of County Com'rs of Hidalgo County, 310 F.R.D. 631, 656–57 (D.N.M. 2015) ("Furthermore, the Court concludes that, if a class has already been certified to pursue certain claims, redundant classes should generally not be certified. Subsequent proposed classes should either be defined to avoid class member-overlap with previously certified classes or else should assert different claims." (citing 2 Newberg on Class Actions § 4:70 (5th ed.))).  Finally, any concerns about manageability "rely, almost entirely, on a premise [the Court has] already rejected—namely, that innumerable individualized inquiries will swallow common ones." Haddock v. Nationwide Fin. Servs., Inc., 293 F.R.D. 272, 287 (D. Conn. 2013).

V.    Motion for Reconsideration

Lastly, defendant moves for reconsideration of the Court's January 19, 2017, Opinion and Order (Doc. #45), in light of the Supreme Court's decision in China Agritech, Inc. v. Resh, 138 S. Ct. 1800 (2018), which, defendant argues, is an intervening change in the law that implemented a "blanket no-tolling-of-class-claims-ever" rule, rendering plaintiff's claims untimely.

The Court disagrees.

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court.  See Devlin v. Transp. Comm'ns Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).  The standard for a motion for reconsideration "is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (a motion for reconsideration "provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice").

In China Agritech, the Supreme Court limited the permissive tolling rule announced in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), which tolls the applicable statute of limitations for all persons encompassed by the class complaint and, if class status is denied, allows them to join an existing suit or file an individual action. China Agritech, Inc. v. Resh, 138 S. Ct. at 1804. Faced with the question whether a putative class member could commence a new class action outside the statute of limitations, the Court found the American Pipe tolling rule "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations" upon the denial of class certification. Id.

This holding, however, does not alter this Court's prior opinion that "American Pipe tolling . . . applies only to cases with federal question jurisdiction over federal claims." (Doc. #45 at 14). See Chavez v. Occidental Chem. Corp., 300 F. Supp. 3d 517, 529 (S.D.N.Y. 2018), reconsideration denied, 2018 WL 620488 (S.D.N.Y. Jan. 29, 2018) ("The American Pipe rule, however, applies only to claims arising under federal law and thus implicating federal question jurisdiction."); Vincent v. Money Store, 915 F. Supp. 2d 553, 560 (S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act. It did not purport to announce a rule that would apple to state law claims."); see also 1 McLaughlin

on Class Actions § 3:15 (14th ed.) ("<u>American Pipe</u> did not itself announce any tolling rule applicable to state law claims.").  <u>China Agritech</u> only concerned the tolling rule announced in <u>American Pipe</u>, and therefore, only applies to cases with federal question jurisdiction over federal claims.

Here, plaintiff's claims arise under state law and implicate diversity jurisdiction.  <u>China Agritech</u> does not apply, and plaintiff's claims are timely.

Accordingly, defendant's motion for reconsideration is denied.

## CONCLUSION

The motion for class certification is DENIED with respect to the proposed Rule 23(b)(2) class and the breach of warranty claim.  In addition, plaintiff may not utilize the energy expense theory of injury or damages model.  The motion for class certification is otherwise GRANTED.

The motions to exclude or strike the opinions of plaintiff's experts are DENIED WITHOUT PREJUDICE.

The motion for reconsideration is DENIED.

The Clerk is instructed to terminate the motions.  (Docs. ## 89, 100, 103, 113).

All counsel are directed to appear for an in-person status conference on May 30, 2019, at 2:15 p.m.  By no later than May 23, 2019, counsel are directed to submit a joint letter addressing all case management issues going forward, including a proposed schedule for discovery on the merits of plaintiff's claims.

Dated: March 18, 2019
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge